MARC J. FAGEL (CA Bar No. 154425)
JINA L. CHOI (NY Bar No. 2699718)
   Email: choij@sec.gov
JOHN S. YUN (CA Bar No. 112260)
   Email: yunj@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone: (415) 705-2500
Telecopy: (415) 705-2501

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br><br> vs. ) <br><br> IGORS NAGAICEVS, ) <br><br> Defendant. ) | Case No. CV-12-0413-CW <br><br> PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR AUTHORIZATION TO SERVE DEFENDANT IGORS NAGAICEVS BY EMAIL <br><br> Date: November 15, 2012 <br> Time: 2:00 p.m. <br> Courtroom: 2 <br> Judge: Claudia Wilken |

## PLAINTIFF'S MOTION FOR SERVICE BY EMAIL

PLEASE TAKE NOTICE that on Thursday, November 15, 2012, at 2:00 p.m., in Courtroom 2 of the Ronald Dellums Federal Building, 1301 Clay Street, Oakland, California 94612, plaintiff Securities and Exchange Commission ("Commission") will move the Court for permission to serve defendant Igors Nagaicevs ("Nagaicevs") with the Summons, Complaint and other pleadings by email in accordance with Rule 4(f)(3) of the Federal Rules of Civil Procedure.  Such email service upon Nagaicev is appropriate because (1) service by email is reasonably calculated to provide Nagaicevs with notice of the Summons and Complaint, (2) service by email upon Nagaicevs is not prohibited by international law or agreement and (3) an effort to personally serve Nagaicevs at his last-known address in Latvia has been unsuccessful.

This Motion will be based upon the attachment Memorandum of Points and Authorities, the Supporting Declaration of John S. Yun, the [Proposed] Order, the pleadings on file, and such other evidence and argument as the Court chooses to entertain.

DATED: October 11, 2012

Respectfully submitted,

John S. Yun
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PROCEDURAL BACKGROUND

Plaintiff Securities and Exchange Commission ("Commission") filed its Complaint against defendant Igors Nagaicevs ("Nagaicevs") on January 26, 2012, alleging a stock price manipulation scheme whereby Nagaicevs illegally accessed the accounts of customers at large broker-dealer firms in the United States.  After gaining access to a customer's brokerage account, Nagaicevs placed unauthorized orders to buy or sell an exchange-listed security for the purpose of moving that security's share price.  Using other accounts that Nagaicevs had opened at unregistered trading firms in the United States, Nagaicevs was able to establish another position in the security in order to profit from the security's price movements following the trades that he had placed in the hijacked brokerage accounts.  Complaint, ¶ 1 (Docket No. 1).

The Commission alleges that from June 2009 through August 2010, Nagaicevs hijacked customer accounts on at least 159 occasions and placed trades affecting the market price of 104 securities listed on the New York Stock Exchange or NASDAQ.  *Id.*, ¶ 2.  Through trading in his own accounts at the unregistered trading firms, Nagaicevs generated over $850,000 in illegal profits for himself.  Meanwhile, the customers of the hijacked accounts suffered over $2 million in losses that were reimbursed by the brokerage firms holding the hacked accounts.  *Id.*, ¶ 3.  This stock manipulation scheme violated the anti-fraud provisions in Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 and Section 17(a) of the Securities Act of 1933.

As part of his price manipulation scheme, Nagaicevs opened trading accounts at least eight unregistered trading firms, including KM Capital Management ("KM Capital"), Mercury Capital, World Trade Securities L.L.C. ("World Trade"), and Broad Street Trading ("Broad Street").  Additionally, Nagaicevs used a firm named Cambridge Trader's Institute ("Cambridge") to open accounts at Zanshin Enterprises ("Zanshin") and Active Trading, Inc.  Supporting Declaration of John S. Yun ("Yun Declaration"), ¶¶ 3-7.  For his accounts at Mercury Capital, World Trade, Zanshin and Active Trading, Nagaicevs provided a street address number at Dzirksteles, Jurmala, Latvia.  Yun Declaration, Exhibits 2, 4, 5.  For all of his trading accounts, Nagaicevs also provided "lemantek@gmailcom" as his email address.  *Id.*, Exhibits 1, 2, 3, 4, 5.  Nagaicevs also provided

1  some of the trading firms with banking and corporate documents which referred to an entity named

2  Lemantek LTD.  *Id.*, Exhibits 2, 4, 5.

3      In September 2009, Nagaicevs used the lemantek@gmail.com email address to communicate

4  with Richard Rizzo of Cambridge about his account activities.  *Id.*, ¶ 7 and Exhibits 6.  In mid-

5  September 2010, Nagaicevs used the lemantek@gmail.com address to communicate with KM Capital

6  regarding the trading proceeds in Nagaicevs account at KM Capital.  *Id.*, ¶ 8 and Exhibit 7.

7  According to Google's subscriber information, Nagaicevs's lemantek@gmail.com account was

8  opened on April 1, 2009, and remained open as of October 15, 2010.  *Id.*, ¶ 9 and Exhibit 8.

9      After filing this action, the Commission obtained Latvian translations of the Summons,

10 Complaint and other court documents and attempted to serve Nagaicevs using the procedures

11 specified in the Hague Convention on Service Abroad of Judicial and Extra Judicial Documents in

12 Civil or Commercial Matters ("Hague Convention").  On April 17, 2012, the Commission submitted

13 a written request to the Latvian Central Authority at the Ministry of Justice ("Latvian Central

14 Authority") to personally serve Nagaicevs with the Summons, Complaint and other documents at the

15 Dzirksteles 8a-2, Jurmala, Latvia address that Nagaicevs used to open most of his trading accounts.

16 Yun Declaration, Exhibit 9.  On July 20, 2012, however, the Division of Courts Cooperation at the

17 Latvian Ministry of Justice mailed a notice to the Commission's counsel stating that the Summons,

18 Complaint and other documents were being returned because "the addressee cannot be located."  Yun

19 Declaration, Exhibit 10 at 1, 3.  The Commission's counsel received the notice and returned papers by

20 mail on August 7, 2012.  *Id.*, Exhibit 10 at 1.

21     **II.    LEGAL ARGUMENT**

22          **A.    RULE 4(f)(3) PERMITS EMAIL SERVICE UPON NAGAICEVS.**

23      Because Nagaicevs is in a foreign country, the Commission may serve him with the Summons

24 and Complaint by using the provisions of Rule 4(f) of the Federal Rules of Civil Procedure.  Fed. R.

25 Civ. Pro. 4(f) (authorizing service upon individuals in a foreign country).  According to Rule 4(f)(1),

26 the Commission may serve Nagaicevs by employing "an internationally agreed means reasonably

27 calculated to give notice, such as those authorized by the Hague Convention."  Fed. R. Civ. Pro.

28 4(f)(1).  As demonstrated above, the Commission was not successful in serving Nagaicevs at his

1  Latvian street address by employing the Hague Convention.  Yun Declaration, Exhibits 9 and 10.

2  As an alternative to service under the Hague Convention, Rule 4(f)(3) of the Federal Rules of

3  Civil Procedure provides that an individual in a foreign country may be served "by other means not

4  prohibited by international agreement as may be directed by the court."  Fed. R. Civ. Pro. 4(f)(3).  By

5  virtue of "this plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not

6  prohibited by international agreement.  No other limitations are evident from the text.  In fact, as long

7  as court-directed and not prohibited by an international agreement, service of process under Rule

8  4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Rio Properties,*

9  *Inc. v. Rio International Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (citing *Mayoral-Amy v. BHI*

10 *Corp.*, 180 F.R.D. 456, 459 n. 4 (S.D. Fla. 1998)).  Under Rule 4(f)(3), plaintiffs may obtain judicial

11 authorization for a "wide variety of alternative methods of service including . . . email." *Id.* at 1016.

12 Courts in the Northern District of California have therefore authorized service by email upon foreign

13 defendants.  *E.g.*, *Craigslist, Inc. v. Temple*, 2010 U.S. Dist. LEXIS 144411 at *3-4 (N.D. Cal. May

14 20, 2010) (Ware, C.J.) (authorizing email service upon Canadian defendant after citing Northern

15 District cases previously approving email service).

16  **B.   EMAIL SERVICE PROVIDES NAGAICEVS WITH PROPER NOTICE.**

17 In *Rio Properties*, *supra*, the Ninth Circuit affirmed the district court's decision to authorize

18 service of the summons and complaint upon a Costa Rican entity by email.  *Id.* at 1017.  Although the

19 Costa Rican company did not have a mailing address in the United States, the business agent at that

20 address was not authorized to accept service of process for the Costa Rican company.  The Costa

21 Rican defendant did, however, have an email address as its preferred method for receiving

22 communications.  *Id.* at 1013.  The plaintiff obtained a court order authorizing service of process by

23 email, as well as service by sending a copy of the papers to the defendant's mailing addresses in the

24 United States and Costa Rica.  *Id.*

25 According to Rule 4(h)(2) of the Federal Rules of Civil Procedure, the Costa Rican entity

26 could be served in the same manner as a foreign individual under Rule 4(f).  *Id.* at 1014.  The *Rio*

27 *Properties* Court found that email service satisfied Rule 4(f)(3)'s provisions because there was no

28 claim that service upon the Costa Rican entity violated international law or lacked district court

1  authorization. *See Id.* at 1015. The *Rio Properties* Court therefore determined "without hesitation"

2  that the service methods (including email) ordered by the district court were acceptable and

3  "reasonably calculated, under these circumstances, to apprise [defendant] of the pendency of the

4  action and afford it an opportunity to respond." *Id.* at 1017.

5       In approving the propriety of email service, the *Rio Properties* Court stated that email

6  "communication has been zealously embraced within the business community" and that the defendant

7  had structured its business so that it could only be contacted by email. *Id.* at 1017-18. Email service

8  is therefore appropriate when authorized by a court order. *Id.* at 1018. Under *Rio Properties*, it is left

9  to "the discretion of the district court to balance the limitations of email service against its benefits in

10 any particualr case." *Id.*

11      As in *Rio Properties*, email service upon Nagaicevs is reasonably calculated to afford him

12 notice of the Commission's action and the opportunity to respond. For at least six of the trading

13 accounts established by Nagaicevs, Nagaicevs provided the lemantek@gmail.com email account as

14 the method by which the trading firms could communicate with him. Yun Declaration, Exhibits 1

15 through 5. Nagaicevs held himself out as a self-employed trader and used his trading accounts for an

16 illegal business whereby he placed illegal trades on at least 159 occasions in 104 listed securities and

17 derived $850,000 in illegal profits. Significantly, when an issue arose in September 2010 between

18 Nagaicevs and KM Capital regarding the trading proceeds in his account at that firm, Nagaicevs used

19 his lemantek@gmail.com account to communicate with that firm. Yun Declaration, Exhibit 7.

20 Nagaicevs therefore uses the lemantek@gmail.com email address as a preferred method of

21 communications regarding his wrongful trading activities, while holding himself out as being

22 associated with a business called Lemantek LTD. Delivering the Summons and Complaint by email

23 to Nagaicevs is therefore the most reasonable method of serving him, especially given the lack of

24 success in serving him, through Latvian authorities, at his street address. *See Rio Properties, Inc. v.*

25 *Rio International Interlink, supra*, 284 F.3d at 1017-18 (approving use of email because of its

26 acceptance by business community and the lack of a street address for the defendant entity); *Popular*

27 *Enterprises, LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562-63 (E.D. Tenn. 2004)

28 (approving service by email upon defendant in Portugal where defendant's address was unknown);

*Williams-Sonoma, Inc. v. Friendfinder Inc.*, 2007 U.S. Dist. LEXIS 31299 at *4-5 (N.D. Cal. April 17, 2007) (White, J) (approving email service on foreign defendants where address was unknown or mail service was refused).

<strong>C.   INTERNATIONAL LAW PERMITS EMAIL SERVICE.</strong>

Under Rule 4(f)(3), this Court may authorize email service upon a foreign defendant unless prohibited by an international agreement. *Rio Properties, Inc. v. Rio International Interlink*, *supra*, 284 F.3d at 1014. The Hague Convention, of which Latvia is a signatory, does not prohibit email service upon Nagaicevs in these circumstances. First, any limitations in the Hague Convention upon methods of service do not apply when, as with Nagaicevs, the foreign government cannot achieve service because the foreign defendant's address is unknown. *See Popular Enterprises, LLC v. Webcom Media Group, Inc.*, *supra*, 225 F.R.D. at 562 & n.1 (ruling that under Article 1 of the Hague Convention, there is no prohibition of email service where Portuguese Ministry of Justice lacked a valid mailing address to effectuate service); *Craigslist, Inc. v. Meyer*, 2010 U.S. Dist. LEXIS 89955 at *6-7 (N.D. Cal. July 26, 2010) (Illston, J.) (stating that email service upon defendant in Thailand would not be prohibited by Hague Convention because defendant's mailing address was not known).

Second, Article 19 of the Hague Convention provides that to the "extent that the internal law of the Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions." Yun Declaration, Exhibit 11. In Latvia, service of the Summons is governed by Article 56 of the Civil Procedure Law of the Republic of Latvia Courts ("Latvian Article 56"). Yun Declaration, Exhibit 12. According to Section (1) of Latvian Article 56, a "summons shall be sent by registered mail, by registered post with a form for acknowledgment of receipt, *electronic mail*, or it shall be delivered by a messenger. [emphasis added]" By virtue of Latvian Article 56, email service is proper, and there is no provision of international law that would prohibit email service upon Nagaicevs.

### III.   CONCLUSION

The Court should authorize service of the Summons and Complaint upon Nagaicevs through email service. Such service is proper under Rule 4(f)(3) of the Federal Rules of Civil Procedure

1  because it is not prohibited by international law or agreement and will provide Nagaicevs with

2  reasonable notice of this litigation.

3  DATED: October 11, 2012

Respectfully submitted,

John S. Yun
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION