UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES & EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>IGORS NAGAICEVS,<br><br>          Defendant. | Case No.  12-cv-00413-JST<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: ECF No. 26 |

**I.    INTRODUCTION**

Plaintiff, the U.S. Securities & Exchange Commission ("S.E.C.") has moved the court for the entry of a default judgment against Defendant Igors Nagaicevs, a Latvian citizen. Plaintiff Securities and Exchange Commission's Motion for Entry of Default Judgment against Defendant Igors Nagaicevs ("Motion"), ECF No. 26. After considering the arguments in the S.E.C.'s papers, and good cause appearing, the Court hereby GRANTS the motion.

**II.   BACKGROUND**

**A.    Factual Background**[1]

The S.E.C. alleges that Mr. Nagaicevs established trading accounts at eight stock trading firms, seven of which are or were incorporated in, and have or had as their principal place of business, the United States of America. Complaint, ECF No. 1, at ¶¶ 11-18, 20-27. Through

---

[1] The court takes these allegations from the complaint. "With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true." Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Moreover, the allegations are supported by the S.E.C.'s investigation, through which the S.E.C. reviewed trading records and trading blotters, and calculated the Mr. Nagaicevs' combined profits. See Declaration of Steven Buchholz in Support of Plaintiff Securities and Exchange Commissions' Request for Entry of Default Judgment against Defendant Igors Nagaicevs, ECF No. 26-1.

those accounts, Mr. Nagaicevs established a long or short position in a security. Id., at ¶ 29. Mr. Nagaicevs then gained access without permission to online brokerage accounts with which the trading firms maintained omnibus trading accounts. Id., at ¶¶ 28-29. Through those compromised accounts, he made large unauthorized trades in the same security to manipulate the stock price in his favor. Id., at ¶ 29. Mr. Nagaicevs then generated profits for himself by buying or selling the shares at the artificially favorable price. Id.

Mr. Nagaicevs repeated this process on at least 159 occasions. Id., at ¶¶ 2, 29. He generated more than $850,000 in profit, and caused losses of more than $2 million to the broker-dealer firms who reimbursed their victimized customers. Id., at ¶ 3.

## B. Procedural History

The S.E.C. filed this action in January 2012, bringing causes of action under Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b). Id., at ¶¶ 38-43.

Service may be made on an individual in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. Pro. 4(f)(1). The S.E.C. alleges that, pursuant to the Hague Convention, it obtained Latvian translation of the summons, complaint and other documents and attempted to serve Mr. Nagaicevs through the Latvian Ministry of Justice, using the address Mr. Nagaicevs used to open most of his trading accounts. Declaration of John S. Yun in Support of Plaintiff Securities and Exchange Commission's Motion for Authorization to Serve Defendant Igors Nagaicevs by Email, ECF No. 12, at ¶ 10 & Exh. 10. The Latvian Ministry of Justice returned the materials, indicating that service was "non executed" because the "addressee cannot be located." Id., at ¶ 11 & Exh. 10.

As an alternative to service through Rule 4(f)(1), service may also be made upon an individual outside the United States "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. Pro. 4(f)(3). Applying a "proper construction of Rule 4(f)(3) and its predecessor, trial courts have authorized a wide variety of alternative methods of service including . . . email." Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir.

2002). The Court granted the S.E.C.'s motion to serve Mr. Nagaicevs through the Gmail address he provided to the trading firms and used to communicate regarding his account activities, provided that the S.E.C. confirm with Google that the address remains active, and that the S.E.C. also mail the summons and complaint directly to the Latvian street address and to a Seychelles address that Mr. Nagaicevs had used in connection with some of his brokerage applications. Order Granting Plaintiff Securities and Exchange Commission's Motion for Authorization to Serve Defendant Igors Nagaicevs by Email, ECF No. 14.

In November 2012, the S.E.C. served the complaint and summons via email, and mailed copies to the Latvian and Seychelles addresses. ECF Nos. 15, 16-1 & 18. The S.E.C. reported that the materials were delivered to the Seychelles address in December 2012, but that the U.S. Postal Service returned the materials sent to the Latvian address after multiple unsuccessful attempts to deliver it. ECF Nos. 16, 17 & 19. Mr. Nagaicevs did not respond to the complaint within twenty-one days, nor make any other appearance in this action at any point. In January 2013, the Court directed the S.E.C. to provide Google's response by February 14, 2013, and directed the S.E.C. to apply to the Clerk of Court for entry of default by that time. Order Addressing Service and Directing Plaintiff to Move for Entry of Default, ECF No. 20. Google confirmed that the email account was "enabled" as of January 29, 2013, and the S.E.C. applied for entry of default in February 2013. Plaintiff Securities and Exchange Commission's Request for Entry of Default against Defendant Igors Nagaicevs; Declaration of John S. Yun, ECF No. 22, at 1:3-18; 3:20-24; Exh. 2.

The Clerk entered Mr. Nagaicevs' default on February 22, 2013. ECF No. 23. The S.E.C. filed this motion for default judgment on May 22, and noticed the motion for a July 11 hearing. ECF No. 26.

**C.     Jurisdiction**

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

3

### 1. Subject-Matter Jurisdiction

This Court has subject-matter jurisdiction over the asserted violation of the Exchange Act pursuant to 15 U.S.C. §§ 78u(d)(1), 78u(e) & 78aa(a), and has subject-matter jurisdiction over the asserted violation of the Securities Act pursuant to 15 U.S.C. § 77v(a). Both actions also arise under laws of the United States. See 28 U.S.C. § 1331.

### 2. Personal Jurisdiction

The federal securities laws authorize nationwide service of process. See 15 U.S.C. §§ 77v(a) & 78aa. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, 'the question becomes whether the party has sufficient contacts with the United States, not any particular state.'" Sec. Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1315 (9th Cir. 1985) (quoting Nelson v. Quimby Island Reclamation District, 491 F.Supp. 1364, 1378 (N.D.Cal.1980)). "In a statute providing for nationwide service of process, the inquiry to determine 'minimum contacts' is . . . 'whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country.'" Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) (quoting Vigman, 764 F.2d at 1316).

The Ninth Circuit "has established a three-prong test for analyzing a claim of specific personal jurisdiction: '(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). A plaintiff can make a *prima facie* showing of personal jurisdiction by establishing the first two factors, at which point the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002) (citing Burger King Corp. v.

4

1    Rudzewicz, 471 U.S. 462, 477 (1985)).

2    "A purposeful availment analysis is most often used in suits sounding in contract," while a
3    "purposeful direction analysis . . . is most often used in suits sounding in tort." Schwarzenegger,
4    F.3d at 802; see also Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 460 (9th Cir.
5    2007). The causes of action in this case are statutory violations, but Mr. Nagaicevs' actions –
6    accessing trading websites without permission and conducting unauthorized trades that deprived
7    the trading companies of money – resemble torts much more than anything involving contract
8    law.[2]

9    "The so-called 'effects' test of Calder v. Jones, 465 U.S. 783 (1984) . . . is normally
10   employed in purposeful direction cases." Yahoo! Inc. v. La Ligue Contre Le Racisme Et
11   L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). "[T]he 'effects' test requires that the
12   defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state,
13   (3) causing harm that the defendant knows is likely to be suffered in the forum state." Dole Food
14   Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). By intentionally accessing trading sites
15   run by American companies (including one in the Northern District of California), and defrauding
16   those organizations of money, Mr. Nagaicevs purposefully directed his activities at the United
17   States, causing foreseeable consequences in this country. Cf. S.E.C. v. Lowrance, Case No. 11-
18   CV-03451-EJD, 2012 WL 2599127, at *2 (N.D. Cal. July 5, 2012) (foreign defendant
19   purposefully directed activities at the forum by soliciting investors there through use of a website,
20   cold calls, and mass mailings). The S.E.C.'s claims arise directly out of those activities.
21   Therefore, the S.E.C. has made a *prima facie* showing that this Court may assert personal
22   jurisdiction over Mr. Nagaicevs. Cf. S.E.C. v. Ficeto, Case No. CV 11-1637-GHK RZX, 2013
23   WL 1196356, at *4-7 (C.D. Cal. Feb. 7, 2013) (court had personal jurisdiction over foreign
24   defendant alleged to have manipulated American over-the-counter securities markets).

---

[2] It is worth noting that the result would be the same if the Court applied the 'purposeful availment' test. Cf. Howard v. Everex Sys., Inc., 228 F.3d 1057, 1068 (9th Cir. 2000) ("[a] defendant who is alleged to have knowingly traded on an American exchange on the basis of inside information has purposefully availed himself of the instrumentalities of United States commerce and can reasonably expect to be haled into an American court").

By failing to appear, Mr. Nagaicevs has failed to carry his burden of showing that the exercise of jurisdiction would be unreasonable. Following Burger King, "[w]e consider the following seven factors when making this determination: '(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.'" CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004) (quoting Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1132 (9th Cir. 2003)). On *sua sponte* review, the Court sees no reason to conclude that the burden on Mr. Nagaicevs to defend himself in the United Sates is likely to compellingly outweigh the interests favoring the exercise of jurisdiction.

**D.     Legal Standard**

Rule 55(b)(2) of the Federal Rules of Civil Procedure permits a court, after entry of default, to enter default judgment against a defendant. "The district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true." Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. Pro. 54(c).

## II. ANALYSIS

### A. Default Judgment

Since the Court takes the well-pleaded allegations of the complaint as true, the second, third, and fifth Eitel factors weigh in favor of default judgment. The first factor weighs in favor of default judgment because if the motion were denied, the S.E.C., and the public it is charged with representing, would be without a remedy. Defendant was served in the manner directed by this Court more than six months ago, and the case has been pending for eighteen months. Since there is no reason to believe that the default was due to excusable neglect, the sixth Eitel factor also weights in favor of default judgment.

The final Eitel factor would seem to weigh against default judgment in every case. However, when a defendant's refusal to answer is the sole obstacle precluding a decision on the merits, the Court gives that factor little weight. As to the fourth factor, the Eitel court upheld the denial of default judgment in part because $2.9 million was at stake. 782 F.2d at 1472. Similarly large sums are at stake here, but in Eitel there was reason for serious reservations about the merits of the complaint, and the defendant's failure to answer appeared likely due to excusable neglect. Id. As discussed *supra*, no such factors weigh against default judgment here. Thus, while the amount at stake indicates that the Court should proceed carefully, by itself it is not a reason to deny the entry of default judgment.

After careful consideration, the Court determines that the entry of default judgment is appropriate.

### B. Scope of Relief

The S.E.C. seeks three forms of relief.

First, the S.E.C. seeks a permanent injunction, pursuant to 15 U.S.C. §§ 77t(b) & 78u(d) & (e), prohibiting Mr. Nagaicevs from future statutory violations. Considering the recurring nature of Mr. Nagaicevs' violations and the high degree of scienter involved, the Court finds that future violations are likely and that injunctive relief is warranted. See S.E.C. v. Fehn, 97 F.3d 1276, 1295-96 (9th Cir. 1996).

Second, the S.E.C. seeks the disgorgement of Mr. Nagaicevs' ill-gotten gains. "The

7

district court has broad equity powers to order the disgorgement of 'ill-gotten gains' obtained through the violation of the securities laws." S.E.C. v. First Pac. Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998). "A disgorgement calculation requires only a 'reasonable approximation of profits causally connected to the violation.'" S.E.C. v. JT Wallenbrock & Associates, 440 F.3d 1109, 1113-14 (9th Cir. 2006) (quoting First Pac. Bancorp, 142 F.3d at 1192, n. 6). After reviewing the findings of the S.E.C.'s investigations and the accompanying calculations, the Court finds that the amount of $874,532 is a reasonable approximation of Mr. Nagaicevs' illegal profits.

The S.E.C. also seeks an award of prejudgment interest. "Courts may allow prejudgment interest even though the governing statute is silent." Frank Music Corp. v. Metro-Goldwyn-Mayer Inc., 886 F.2d 1545, 1550 (9th Cir. 1989). "The decision to grant prejudgment interest rests with the discretion of the trial court," Vance v. Am. Hawaii Cruises, Inc., 789 F.2d 790, 794 (9th Cir. 1986), and is based on equitable considerations, including "[t]he goal of compensating the injured party fairly for the loss caused by the defendant's breach of the statutory obligation." Frank, 886 F.2d at 1545. "Prejudgment interest compensates the injured party for the loss of the use of money he would otherwise have had." Id. Bearing these considerations in mind, the Court concludes that an award of prejudgment interest is appropriate, in the amount of $4,519.

Finally, the S.E.C. seeks civil monetary penalties under 15 U.S.C. §§ 77t(d)(2) & 78u(d)(3)(A). The maximum "third tier" of monetary penalties are available for securities violations that involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and also "directly or indirectly resulted in substantial losses." 15 U.S.C. §§ 77t(d)(2)(C) & 78u(d)(3)(B)(iii). Mr. Nagaicevs' 159 separate acts caused $2 million in damages and demonstrated a high degree of scienter. The Court therefore finds that the maximum third-tier civil penalty is appropriate for each of Mr. Nagaicevs' two statutory violations, in the total amount of $260,000.

/ / /

/ / /

/ / /

/ / /

**III.     CONCLUSION**

The motion for default judgment is GRANTED.  Not less than seven days from the date of this order, Plaintiff S.E.C. is ordered to prepare and file with the Court a proposed order of judgment, consistent with this order.

**IT IS SO ORDERED**.

Dated:  July 12, 2013

                                                  JON S. TIGAR
                                          United States District Judge